**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION | CIVIL ACTION NO. 09-980 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| IESI LOUISIANA CORPORATION d/b/a IESI SOLID WASTE SERVICES | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM ORDER

Before this Court is a Motion for Partial Summary Judgment on the Issue of Disabled Status within the Meaning of the ADA [Record Document 26] filed on behalf of the Plaintiff, United States Equal Employment Opportunity Commission ("EEOC"). Defendant opposes this motion. For the reasons discussed herein, the EEOC's motion for partial summary judgment is **DENIED.**

## FACTUAL BACKGROUND

On or about July 5, 2005, Ronald Harper ("Harper") began working for Defendant IESI LA Corporation d/b/a IESI Solid Waste Services ("IESI") as a Container Delivery Driver. [Record Document 26-1, p.2]. On August 12, 2005, Harper informed his new supervisor Lonnie Hayes[1] that he is dyslexic. That same day, Harper's employment with IESI was terminated because he allegedly "could not do 'paperwork' and was a danger while driving." [Complaint ¶ 13]. Harper submitted a Charge of Discrimination to the EEOC alleging that he has been discriminated against on the basis of his dyslexia. Four years later, the EEOC commenced this litigation on behalf of Harper alleging IESI violated the

---

[1]Lonnie Hayes began working as the Operations Manager on or about August 1, 2005. [Record Document 26, p.2].

Americans with Disabilities Act ("ADA")  by terminating Harper and by failing to provide a reasonable accommodation.  Id. at ¶¶ 15-20.

In its motion for partial summary judgment, the EEOC asserts that the uncontradicted evidence in the record establishes that Harper has dyslexia which substantially limits him in the major life activities of learning and reading and, therefore, requests the Court enter an order decreeing Harper "disabled" within the meaning of the ADA as a matter of law.  [Record Document 26-1].

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).  Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Id., 477 U.S. at 322, 106 S. Ct. at 2552.  If the party moving for summary judgment fails to satisfy its initial burden of demonstrating the absence of a genuine issue of material fact, the motion must be denied, regardless of the nonmovant's response.  Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).  If the motion is properly made, however, Rule 56(c) requires the nonmovant to go "beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial."  Wallace v. Texas Tech. Univ., 80 F.3d 1042, 1047 (5th Cir. 1996) (citations omitted).

While the nonmovant's burden may not be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence, Little, 37 F.3d at 1075, Wallace, 80 F.3d at 1047, all factual controversies must be resolved in favor of the nonmovant. Cooper Tire & Rubber Co. v. Farese, 423 F.3d 446, 456 (5th Cir. 2005).

## LAW AND ANALYSIS

The ADA, 42 U.S.C. § 12101 *et seq.*, makes it unlawful for an employer to "discriminate against a qualified individual on the basis of disability in regard to . . . the hiring, advancement, or discharge of employees, . . . and other terms, conditions, and privileges of employment."[2] 42 U.S.C. § 12112(a). A "disability" is defined by the Act as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such impairment." 42 U.S.C. § 12102(1). "Major life activities" are defined to include, *inter alia*, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working. 42 U.S.C. § 12102(2)(A); see also 29 C.F.R. § 1630.2(i).

The EEOC argues it is undisputed that Harper has dyslexia and is substantially limited in learning, reading, writing and arithmetic.[3] [Record Document 26-1, p.5]. In

---

[2]A "qualified individual" is defined as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).

[3]The EEOC contends Harper was also "regarded as" having a disability within the meaning of the ADA but concedes the instant motion for partial summary judgment is limited to the issue of whether Harper does in fact have "a physical or mental

support of its argument, the EEOC points to the expert report of Dr. James Pinkston, Ph.D., in which Dr. Pinkston opines that Harper demonstrates "significant limitations in the area of academic functioning including written language, mathematics, and reading."  See Pinkston Report, p.8.  In opposition, IESI claims there is a genuine issue of material fact as to whether Harper was "substantially limited" at the time of the alleged discriminatory conduct and that a learning impairment such as dyslexia does not result in a finding as a matter of law that Harper was "disabled" within the meaning of the ADA.  See Record Document 29-1, pp.6-10.

Pursuant to the EEOC's own Interpretative Guidance, an individual who suffers from dyslexia, a learning disability, is an individual with a recognized "impairment."  See 29 C.F.R. § 1630, App. § 1630.2(j).  However, establishing an "impairment" is only the first step in the "disability" analysis.  Once an individual proves he or she suffers from an impairment, he or she must then prove the impairment "*substantially limits*" one or more of life's major life activities.  See id. ("An individual is not substantially limited in a major life activity if the limitation . . . does not amount to a significant restriction when compared with the abilities of the average person.").  Because many impairments do not impact an individual's life to the degree that they constitute disabling impairments and because some impairments may be disabling for particular individuals but not for others, the determination of whether an individual is "substantially limited" in one or more major life activities must be made on a case by case basis.

---

impairment that substantially limits one or more major life activities."  See Record Document 26-1, p.5 at n.6].

The EEOC relies primarily on Dr. Pinkston's report in support of its motion for partial summary judgment.   However, even a cursory review of Dr. Pinkston's report indicates there remain genuine issues of material fact as to whether Harper's dyslexia "substantially limits" one or more of his major life activities and, therefore, whether Harper suffers from a "disability" within the meaning of the ADA.  Dr. Pinkston reported that Harper scored in the average range in the following areas: overall intellectual skills; memory functioning; sensory, perceptual and motor functioning; and psychological and personality functioning. [Pinkston Report pp. 6-7].  Dr. Pinkston's report also indicates that Harper has "been able to learn a variety of job tasks, some moderately skilled, and to reliably provide competitive work for his various employers."   Id. at p.8.   Furthermore, Harper's own testimony demonstrates he graduated high school and received a diploma, he successfully completed two competitive training courses and obtained his commercial drivers license, and he was able to perform daily job duties requiring a moderate level of reading and comprehension without incident.  See Record Document 29 (Harper deposition excerpt). Consequently, the Court cannot hold as matter of law that Harper's dyslexia "substantially limits" his life activities of learning and reading.

## CONCLUSION

The Court finds there are genuine issues of material fact on the issue of "disability" within the meaning of the ADA.

Accordingly,

**IT IS ORDERED** that the EEOC's Motion for Partial Summary Judgment on the Issue of Disabled Status within the Meaning of the ADA [Record Document 26] be and is hereby **DENIED.**

**THUS DONE AND SIGNED** in Shreveport, Louisiana, on this 13th day of August, 2010.

_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE