UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION | CIVIL ACTION NO. 09-980 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| IESI LOUISIANA CORPORATION d/b/a IESI SOLID WASTE SERVICES | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM ORDER

Before this Court is a Motion for Partial Summary Judgment on the Issues of Precluding Computation Evidence, Failure to Mitigate, Front Pay and the Capping of Compensatory and Punitive Damages [Record Document 27] filed on behalf of the Defendant, IESI LA Corporation d/b/a IESI Solid Waste Services ("IESI"). Plaintiff opposes this motion. For the reasons discussed herein, IESI's motion for partial summary judgment is **GRANTED IN PART** and **DENIED IN PART**.

## FACTUAL BACKGROUND

On or about July 5, 2005, Ronald Harper ("Harper") began working for Defendant IESI as a Container Delivery Driver. [Record Document 30 at 1]. On August 12, 2005, Harper informed his new supervisor Lonnie Hayes[1] that he is dyslexic. That same day, Harper's employment with IESI was terminated because he allegedly "could not do 'paperwork' and was a danger while driving." [Complaint ¶ 13]. Harper submitted a Charge of Discrimination to the United States Equal Employment Opportunity Commission ("EEOC") alleging that he has been discriminated against on the basis of his dyslexia.

---

[1] Lonnie Hayes began working as the Operations Manager on or about August 1, 2005. [Record Document 30 at 1].

Four years later, the EEOC commenced this litigation on behalf of Harper alleging IESI violated the Americans with Disabilities Act ("ADA") by terminating Harper and by failing to provide a reasonable accommodation. Id. at ¶¶ 15-20.

In its motion for partial summary judgment, IESI asserts that "the EEOC's prayer for back pay, front pay and pecuniary compensatory damages should be dismissed due to the EEOC's deliberate refusal to provide any specific dollar amount or computation for these alleged categories of damages as required under [F]ed. R. Civ. P. Rule 26(a) despite repeated requests for the same . . . ;" "any claim for back pay after March 2006 should be dismissed due to Harper's admitted failure to mitigate his damages . . . ;" "the EEOC's prayer for front pay could also be dismissed in its entirety with prejudice because Harper has been unemployed by choice since 2007, and by choice he has not looked for any work of any kind . . .;" and "the appropriate damages cap under Section 1981a is $100,000." [Record Document 27 at ¶¶ 2-5].

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id., 477 U.S. at 322, 106 S. Ct. at 2552. If the party moving for summary

judgment fails to satisfy its initial burden of demonstrating the absence of a genuine issue of material fact, the motion must be denied, regardless of the nonmovant's response. Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). If the motion is properly made, however, Rule 56(c) requires the nonmovant to go "beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial." Wallace v. Texas Tech. Univ., 80 F.3d 1042, 1047 (5th Cir. 1996) (citations omitted). While the nonmovant's burden may not be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence, Little, 37 F.3d at 1075, Wallace, 80 F.3d at 1047, all factual controversies must be resolved in favor of the nonmovant. Cooper Tire & Rubber Co. v. Farese, 423 F.3d 446, 456 (5th Cir. 2005).

## LAW AND ANALYSIS

### I. Excluding Monetary Damages

According to FED. R. CIV. PRO. Rule 26(a)(1)(A)(iii):

> a party must, without awaiting a discovery request, provide to the other parties: . . . a computation of each category of damages claimed by the disclosing party–who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary materials, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered.

Rule 37(c) states that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." In determining whether the failure was harmless, this Court

weighs four factors: "(1) the importance of the evidence; (2) the prejudice to the opposing party of including the evidence; (3) the possibility of curing such prejudice by granting a continuance; and (4) the explanation for the party's failure to disclose." Tex. A & M Research Found. v. Magna Transp., Inc., 338 F.3d 394, 402 (5th Cir. 2003).

Rule 37 is flexible, and the Court has broad discretion to use as many and varied sanctions as necessary to balance out prejudice to the parties. Guidry v. Continental Oil Co., 640 F.2d 523, 533 (5th Cir. 1981). Extreme sanctions such as dismissal or default judgment, however, are remedies of last resort, and the Court may apply them only in extreme circumstances where failure to comply with the Court's order results from wilfulness or bad faith. National Hockey League v. Metropolitan Hockey Club, Inc., 427 U.S. 639, 640; Butler v. Cloud, 104 Fed. Appx. 373, 374 (5th Cir. 2004); Batson v. Neal Spelce Associates, Inc., 765 F.2d 511, 514-15 (5th Cir. 1985). Further, such sanctions are proper only where the deterrent value of Rule 37 cannot be substantially achieved by the use of less drastic sanctions, and they may be inappropriate in cases where neglect is attributable to an attorney rather than a client, or is due to confusion or misunderstanding. Butler, 104 Fed. Appx. at 374; Batson, 765 F.2d at 514.

In the instant case, the Defendant IESI seeks the most extreme remedy under Rule 37–dismissal. IESI contends the EEOC has failed consistently to provide them with a "computation" of their proposed damages. [Record Document 27-2 at 1-2]. This is only partly true. According to the "EEOC's Initial Disclosure Statements Regarding Damage Computation," which were provided on August 11, 2009, the estimated damages were:

1. Non-pecuniary compensatory damages for Mr. Harper: $150,000;
2. Punitive Damages for Mr. Harper: $150,000;

>    3. Back pay for Mr. Harper is not estimable at this time, but will be estimated in a supplemental disclosure after undersigned EEOC counsel obtains Mr. Harper's tax returns/W2 forms via IRS releases and conducts discovery regarding Defendant's wage rate increases and benefits for Defendant's position from which Mr. Harper was terminated.
>
>    4. Pecuniary compensatory damages are not estimable at this time, but will be estimated in a supplemental disclosure after proof of costs for relevant job search expenses and other expenses are provided to undersigned counsel by Mr. Harper.
>
>    5. Front pay in lieu of reinstatement, which would be determined solely by the Judge, is not estimable for disclosure purposes since discovery regarding Defendant's wage rate increases and benefits for Defendant's position from which Mr. Harper was terminated.

[Record Document 27-3 at 4-5]. The discovery deadline was June 1, 2010. At the close of discovery, the EEOC had not provided the supplemental disclosure. However, on June 24, 2010, it provided IESI with supplemental disclosure providing the estimated damages for back pay and pecuniary compensation. Furthermore, "[t]he EEOC produced all underlying wage data in its possession to Defendant in October 2009, before Defendant deposed Charging Party. Defendant took Charging Party's deposition later that month." [Record Document 30 at 3 n.5]. It does not appear to this Court that the EEOC's failure to disclose the remaining computations was the product of willfulness or bad faith. As such, exclusion of the underlying evidence which would lead to a dismissal of those claims is too harsh of a remedy. This Court finds that the EEOC's disclosure of those

computations on June 24th, some three and a half months before the trial date, coupled with the EEOC's providing of the underlying evidence in October 2009 has cured any potential prejudice to the opposing party.

As such, the Defendant's motion for summary judgment on this issue is denied.

## II.     Mitigation of Damages

Next, the IESI moves for summary judgment on the issue of back pay contending that Mr. Harper failed to mitigate his damages. [Record Document 27-2 at 9]. According to the Fifth Circuit, "'[b]ack pay' commonly refers to the wages and other benefits that an employee would have earned if the unlawful event that affected the employee's job related compensation had not occurred." Rutherford v. Harris County, 197 F.3d 173, 191 (5th Cir. 1999). A plaintiff suing for back pay under the ADA has a duty to mitigate his damages by using reasonable diligence to obtain substantially equivalent employment. Migis v. Pearle Vision, Inc., 135 F.3d 1041, 1045 (5th Cir. 1998). The "employer has the burden of proving failure to mitigate." Palasota v. Haggar Clothing, Co., 499 F.3d 474, 486 (5th Cir. 2007).

IESI can meet this burden by demonstrating (1) that substantially equivalent work was available and (2) that the plaintiff did not exercise reasonable diligence to obtain this work. Sellers v. Delgado Coll., 902 F.2d 1189, 1193 (5th Cir.1990)(citation omitted). "Although the employer is normally required to prove that substantially equivalent work was available and that the former employee did not exercise reasonable diligence to obtain it, once the 'employer proves that an employee has not made reasonable efforts to obtain work, the employer does not also have to establish the availability of substantially

equivalent employment.'" West v. Nabors Drilling USA, Inc., 330 F.3d 379, 393 (5th Cir. 2003) (quoting Sellers v. Delgado Coll., 902 F.2d 1189, 1193 (5th Cir. 1990)).[2]

  IESI has provided this Court with a chart of Mr. Harper's employment activity since he was discharged by IESI. See Record Document 27-1 at 3-4. The EEOC contests the veracity of the list. [Record Document 30-1 at 10]. A review of Mr. Harper's deposition reveals that he held various jobs from the time of his discharge from IESI until sometime in 2007. [Record Document 31-3 at 42-48]. Since then he has admitted that he has had no job. Id. at 48. He has stated that since that time, "I've been looking but not as hard as I could." Id. at 36. Further, he stated that he had been looking by "word of mouth, listening." Id. at 53. To explain his lack of diligence he stated, "Being married, moving into a new home, taking my wife back and forth to work, trying to know the area in which we're living in. Just taking care of, trying to get things organized, and I'm just settling in. And trying to find something that would be within the hours my wife works, because I have to go and pick her up at the moment." Id. at 53. His deposition indicates that from the time of his discharge until sometime in 2007 he may have exercised reasonable diligence to find work. However, his deposition also indicates that from the time of his discharge from Wal-Mart and his attempt to find work via the Work Force Center in Colorado in 2007, he has

---

  [2]This Court recognizes that the holding in Sellers is in conflict with an earlier Fifth Circuit opinion. In Sparks v. Griffith, the Fifth Circuit adopted a test for mitigation in employment discrimination cases, stating "the defendant-appellee has to show not only that the plaintiff-appellant failed to use reasonable care and diligence, but that there were jobs available which appellant could have discovered and for which [he] was qualified." 460 F.2d 433, 443 (5th Cir. 1972). This case has yet to be overruled and shows no negative history. This case is just now beginning a new cycle of citation in employment discrimination cases. See Starr v. Oceaneering Intern., Inc., 2010 WL 644445, at *12 (S.D.Tex. Feb 18, 2010), Huffman v. City of Conroe, 2009 WL 361413, at *13 (S.D.Tex. Feb.11, 2009). Despite this unexpected "resurgence," this Court feels compelled to go with the "newer" standard since several panels of this circuit have adopted and reiterated it in recent opinions.

not exercised reasonable diligence to obtain work. As such, genuine issues of material fact remain for trial as to his back pay from the date of his discharge from IESI until his discharge from Wal-Mart in 2007. Conversely, this Court finds that summary judgment is appropriate and Mr. Harper is not entitled to back pay for any time period following the date of his discharge from Wal-Mart in 2007.

### III.   Front Pay

According to the EEOC, "[it] does not intend to seek front pay in this matter, and waives its right to pursue front pay damages." [Record Document 30 at 17]. Therefore, summary judgment on this issue is appropriate for IESI.

### IV.   Statutory Damages Cap

The limitations on Title VII compensatory and punitive damages are found in 42 U.S.C. § 1981a(b), which provides:

> (3) Limitations
>
> The sum of the amount of compensatory damages awarded under this section for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses, and the amount of punitive damages awarded under this section, shall not exceed, for each complaining party-
>
> (A) in the case of a respondent who has more than 14 and fewer than 101 employees in each of 20 or more calendar weeks in the current or preceding calendar year, $50,000;
>
> (B) in the case of a respondent who has more than 100 and fewer than 201 employees in each of 20 or more calendar weeks in the current or preceding calendar year, $100,000; and
>
> (C) in the case of a respondent who has more than 200 and fewer than 501 employees in each of 20 or more calendar

> weeks in the current or preceding calendar year, $200,000; and
>
> (D) in the case of a respondent who has more than 500 employees in each of 20 or more calendar weeks in the current or preceding calendar year, $300,000.

42 U.S.C. § 1981a(b)(3). For purposes of this statute, this circuit has held that the "current year" refers to the year in which the discriminatory act took place, not the year of judgment. See Vance v. Union Planters Corp., 209 F.3d 438, 446 (5th Cir. 2000); cf. Dumas v. Town of Mount Vernon, 612 F.2d 974, 979 n. 4 (5th Cir.1980).

"The statute limits allowable damages based on the number of employees employed by the employer in the current year, but it is silent about how to identify the relevant employer. Thus, when there is more than one entity involved, either through a parent/subsidiary or a joint-employer relationship, the question becomes: Which entities' employees are counted for purposes of calculating the damages cap?" Vance v. Union Planters Corp., 279 F.3d 295, 297 (5th Cir. 2002) ("Vance II"). "The doctrine of limited liability creates a strong presumption that a parent corporation is not the employer of its subsidiary's employees." Lusk v. Foxmeyer Health Corp., 129 F.3d 773, 778 (5th Cir. 1997). However, a plaintiff may overcome that presumption by proving that the parent company and its subsidiary are a single enterprise. See Johnson v. Crown Enterprises, Inc., 398 F.3d 339, 344 (5th Cir. 2005). Factors that this circuit considers to determine if distinct entities constitute an integrated enterprise are (1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control. Trevino v. Celanese, 701 F.2d 397, 404 (5th Cir. 1983). "Courts applying this four-part standard in Title VII and related cases have focused on the second factor: centralized control of labor relations." Id. "This criterion has been further

refined to the point that '[t]he critical question to be answered then is: What entity made the final decisions regarding employment matters related to the person claiming discrimination?' " Id. Whether two employers are engaged in an integrated enterprise for purposes of Title VII is a fact intensive determination. Vance II, 279 F.3d at 297.

Here "the EEOC assumes that the applicable damages cap is $300,000." [Record Document 27-3 at 4]. IESI argues that "[t]here is no genuine issue that IESI LA Corporation, the only named defendant in this matter, employed more than 100 but fewer than 200 employees in 2004 and 2005." [Record Document 32-1 at 7]. Upon review of the transcripts and submitted exhibits, this Court is of the opinion that there are two genuine issues of material fact for the triers of fact to resolve: (1) Are IESI LA Corporation and IESI Corporation a single entity; and (2) did IESI LA Corporation have more than 201 employees at the time the discriminatory act took place? As such, summary judgment is not appropriate on this issue.

## CONCLUSION

The Court finds there are genuine issues of material fact as to the Preclusion of Computation Evidence, Failure to Mitigate, and the Capping of Compensatory and Punitive Damages, conversely, there are no genuine issues of material fact as to Back Pay from the time of Mr. Harper's discharge from Wal-Mart in 2007 and Front Pay.

Accordingly,

**IT IS ORDERED** that IESI's Motion for Partial Summary Judgment on the Issues of Precluding Computation Evidence, Failure to Mitigate, and the Capping of Compensatory and Punitive Damages [Record Document 27] be and is hereby **DENIED.**

**IT IS FURTHER ORDERED** that IESI's Motion for Partial Summary Judgment on the Issue of Back Pay [Record Document 27] be and is hereby **GRANTED** in so far as it pertains to claims of Back Pay from the time of Mr. Harper's discharge from Wal-Mart in 2007.

**IT IS FURTHER ORDERED** that IESI's Motion for Partial Summary Judgment on the Issue of Front Pay [Record Document 27] be and is hereby **GRANTED**.

**THUS DONE AND SIGNED** in Shreveport, Louisiana, on this 27th day of August, 2010.

_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE